# United States Court of Appeals
## For the First Circuit

---

Nos. 01-1116
     01-1834

ROY W. WHITE,

Petitioner, Appellant,

v.

MICHAEL V. FAIR,

Respondent, Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and O'Toole, Jr.* District Judge.

---

John M. Thompson, with whom Thompson & Thompson, P.C., were on brief, for appellant.
James J. Arguin, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, was on brief, for appellee.

---

March 28, 2002

---

---

*Of the District of Massachusetts, sitting by designation.

**STAHL**, **Senior Circuit Judge**.    On April 29, 1985, petitioner-appellant Roy W. White ("White") sought a writ of habeas corpus in federal district court for relief from his conviction in Massachusetts state court for second degree murder.  He now appeals the March 26, 1987 dismissal with prejudice of his habeas petition, as well as a September 27, 1999 order denying a motion for relief from the 1987 dismissal.  In addition, he appeals two orders by the district court, issued on September 28, 2000 and May 30, 2001, each denying a motion for reconsideration.  We hold that we do not have jurisdiction to consider the 1987 dismissal of White's habeas petition, and we affirm on the merits the 1999 order denying relief from the 1987 dismissal as well as the orders denying White's two motions for reconsideration.

I.

A. The Dismissal of White's Habeas Corpus Petition

Following a conviction for second degree murder in Massachusetts state court in 1971, White was sentenced to life imprisonment.  His conviction was affirmed on direct appeal. Commonwealth v. White, 296 N.E. 2d 822 (Mass. 1973).  After a failed attempt to obtain a new trial in state court, see Commonwealth v. White, 467 N.E. 2d 79 (Mass. 1984), White filed a writ of habeas corpus in the district court on April 29, 1985, arguing that his murder conviction was obtained in violation of his constitutionally guaranteed right to due process of law because the jury had been given instructions in violation of Sandstrom v.

-2-

Montana, 442 U.S. 510 (1979).  On March 19, 1986, while his habeas petition was pending, White failed to return to prison from a then-authorized furlough program and became a fugitive.  On February 27, 1987, a magistrate judge issued a report and recommendation that White's petition be dismissed with prejudice.  White v. Fair, No. 85-1670-WF, R. Doc. 9 (D. Mass. Feb. 27, 1987) (Collings, Mag. J.). The magistrate judge based his determination on the fact that, as a fugitive from justice, the petitioner was not entitled to invoke the powers of the court.  Id. at 1; see Molinaro v. New Jersey, 396 U.S. 365 (1970).

On March 26, 1987, the district court adopted the magistrate judge's recommendation and dismissed the petition.  The district court did so by a handwritten note in the margin of the magistrate judge's report, stating "[f]or the compelling reasons stated in this report Plaintiff's Petition is hereby DISMISSED." White v. Fair, No. 85-1670-WF, R. Doc. 9 (D. Mass. March 26, 1987) (Note by Wolf, J.) (hereinafter "1987 Dismissal").  The order was not set out on a separate document  as required by Rule 58 of the Federal Rules of Civil Procedure.[1]

B. White's Post-Dismissal Correspondence with the Court

Subsequently, White was apprehended and returned to Massachusetts in July 1987.  The parties disagree both as to whether White understood at the time of his re-incarceration that his habeas petition had been dismissed with prejudice and as to

---

[1]See Fed. R. Civ. P. 58 ("Every judgment shall be set forth on a separate document.").

-3-

whether he took any action to try to revive the dismissed petition. White claims that he believed that his habeas claim had been put on hold pending exhaustion of state remedies and that, to that end, he filed a petition for rehearing, as well as later apparently a motion for a new trial, in state court. White also contends -- but offered evidence to this effect for the first time only in a motion for reconsideration -- that he prepared and mailed a motion to vacate the order of dismissal of his habeas petition in August 1987.

In any case, the parties agree that White corresponded with the district court in June and August of 1990. On June 18, 1990, White sent a letter to district court judge Andrew Caffrey -- who was not the judge who had dismissed his habeas petition -- requesting him to instruct the clerk's office to send him his file, so that he could "submit appropriate motions to this court for review and disposition." In the same letter, White stated that he had "serious reason to believe that fundamental constitutional rights are at stake in this case and that it should have not been dismissed with prejudice in the manner that it was." On June 26, 1990, White filed a motion with the district court, seeking to waive copying costs on certain documents. On August 6, 1990, White wrote again to Judge Caffrey, asking for a ruling on his motion to waive copying costs. He stated that "[t]he requested documents are integral to new motions to this court that would seek a thorough reconsideration of this matter." The transferred record does not indicate what action, if any, was taken on White's requests. In

any event, White did not follow up his 1990 correspondence with the court with any motions or appeals.

## C. White's Motion for Relief from the 1987 Dismissal

It was not until April 23, 1997 that White filed a motion for relief from the 1987 dismissal pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. See Rule 11, Rules Governing Section 2254 Cases in the United States District Courts (applying Federal Rules of Civil Procedure to habeas corpus actions). While recognizing that his motion was filed ten years after the last activity on his habeas action, White argued that the district court nevertheless had jurisdiction to review the 1987 Dismissal of his habeas petition because no final judgment had been entered and the time for appeal had thereby not begun to run. White based this argument on the fact that the district court order dismissing his case had not been entered on a separate document.

On September 27, 1999, the district court denied White's motion for relief from the order of dismissal. White v. Fair, No. 85-1670-WF, R. Doc. 24 (D. Mass. Sept. 27, 1999) (Wolf, J.) (hereinafter "1999 Order"). The court assumed, without finding, that no separate document had been filed dismissing White's habeas petition. Relying on Bankers Trust Co. v. Mallis, 435 U.S. 381, 384 (1978), and Wang Laboratories, Inc. v. Applied Computer Sciences, Inc., 926 F.2d 92, 96 (1st Cir. 1991), the court nevertheless determined that it lacked jurisdiction to hear White's motion, because the absence of a separate document did not affect the finality of the judgment and the parties had waived the

-5-

separate document requirement where both had understood that final judgment had been entered. The court further reasoned that, even if it did have jurisdiction to reconsider its 1987 decision, it was inappropriate to do so given that the dismissal was a permissible and appropriate exercise of the court's discretion, Molinaro, 396 U.S. at 365-66, and that the public interest would not be served when claims of unconstitutional conduct were reconsidered years after the events in question.

D. White's Motions for Reconsideration

White did not file a notice of appeal challenging the 1999 Order, but instead filed a motion for reconsideration on October 29, 1999 (hereinafter the "First Motion for Reconsideration"). He argued in this motion that, contrary to what the district court had found, he had not understood that the 1987 dismissal was final and therefore could not have waived the separate document requirement. The district court denied the motion. White v. Fair, No. 85-1670-WF, R. Doc. 28 (D. Mass, Sept. 28, 2000) (Wolf, J.) (hereinafter "2000 Order"). On October 11, 2000, White filed a motion to extend the time for filing a notice of appeal of the 2000 Order to November 27, 2000, which was allowed by the court. He then filed a timely notice of appeal on November 27, 2000.

On the same day, White also filed a motion for reconsideration of the 2000 Order (hereinafter the "Second Motion for Reconsideration"), claiming that evidence discovered since that order showed that in July or August of 1987 White had filed a

-6-

motion to vacate the 1987 dismissal, counteracting any inference of waiver. On May 30, 2001, the district court denied White's Second Motion for Reconsideration. White v. Fair, No. 85-1670, R. Doc. 46 (D. Mass., May 30, 2001) (Wolf, J.) (hereinafter "2001 Order"). White timely appealed on June 7, 2001. We consolidated this appeal with White's appeal of the denial of his First Motion for Reconsideration.

## II.

On appeal, White asks us to review the district court's determinations in the 1987 Dismissal, in the 1999 Order denying relief from the 1987 Dismissal and in the two orders denying White's motions for reconsideration. On February 7, 2001 we asked White to show cause why we have jurisdiction to consider the 1987 Dismissal and the 1999 Order. We then determined on March 26, 2001 that the appeal could go forward because we had jurisdiction at least as to the denials of the motions for reconsideration. Reserved for this panel was the question of whether jurisdiction exists to review the 1987 Dismissal and the 1999 Order.[2] We take

[2]Appellee argues that White cannot take an appeal from any of the district court's underlying orders because no certificate of appealability (COA) has issued in this case, as required by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2253(c) (1996), and Rule 22(b) of the Federal Rules of Appellate Procedure. See Slack v. McDaniel, 529 U.S. 473, 482 (2000) (where petitioner sought appellate review after the AEDPA's effective date, § 2253(c) governs his right to appeal). Although White applied to the district court for a COA on January 2, 2001, the district court has not ruled on that application. We nevertheless disagree that the lack of a COA is fatal to White's appeal. Under the AEDPA amendments, a habeas petitioner who fails to obtain a COA from the district court may request a circuit judge to issue the

up the relevant jurisdictional questions as we review each order. We hold that we do not have jurisdiction to review the 1987 Dismissal, but find that White's actions were sufficient to create jurisdiction as to the 1999 Order. We nevertheless affirm the 1999

---

COA. Fed. R. App. P. 22(b)(1). Furthermore, "[i]f no express request for a certificate is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals." Fed. R. App. P. 22(b)(2). Accordingly, in Bui v. Dipaolo, 170 F.3d 232 (1st Cir. 1999), we stated that "for cases in which the district court does not grant a COA at all . . . the court of appeals must deem a notice of appeal to represent a request for a COA on all issues raised." 170 F.3d at 237. Although the quoted language in Bui contemplated a situation where the district court had denied the petitioner's request for a COA on all issues, unlike the fact scenario we have here, where the district court has not ruled on the request at all, we find that the same principle should apply. See also Slack, 529 U.S. at 481-83 (treating a notice of appeal as a request for a COA where no request for a COA was filed at the district court level). We therefore treat White's notice of appeal as a request for a COA.

As to the determination of when a COA should issue, the Supreme Court directs us as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack, 529 U.S. at 484. Although we ultimately determine that the district court was correct in its procedural ruling, and although we therefore do not reach the merits of White's underlying constitutional claim, as our careful consideration of White's claims indicates, we believe that jurists of reason would find these issues debatable and that a COA should therefore issue.

-8-

Order on its merits, as well as affirm the denials of White's motions for reconsideration.

## A. The 1987 Dismissal

Rule 4(a) of the Federal Rules of Appellate Procedure provides that a notice of appeal in a civil case must be filed "within 30 days after the judgment or order appealed from is entered." A motion for relief under Rules 59 or 60 may toll the time for appeal until the entry of the order disposing that motion, but only if the motion is filed within 10 days after the final judgment is entered. Fed. R. App. P. 4(a)(4)(A) (stating that the time to file an appeal runs from the entry of the order disposing a Rule 60 motion if the Rule 60 motion was filed no later than 10 days after the judgment was entered); Fed. R. Civ. P. 59 (b), (e) (stating that a motion for a new trial or a motion to alter or amend judgment must be filed within 10 days after entry of judgment). On its face, White's appeal of the 1987 dismissal is thus untimely. As we have stated, White instead relies on Rule 58's separate document requirement to argue that his appeal is timely. Although the lack of a separate document does not affect the finality of the judgment,[3] the final judgment must issue on a separate document before the time for appeal begins to run.

Previously, we have announced a clear rule that waiver of the right to judgment entered on a separate document will be

---

[3] See Wang Labs., 926 F.2d at 96 ("Because '[t]he sole purpose of the separate-document requirement . . . was to clarify when the time for appeal under 28 U.S.C. § 2107 begins to run,' the lack of a separate document does not affect the finality of the judgment.") (citing Bankers Trust, 435 U.S. at 385).

inferred where a party fails to act within three months of the court's final order in a case. <u>Fiore</u> v. <u>Wash. County Cmty. Mental Health Ctr.</u>, 960 F.2d 229, 236 (1st Cir. 1992) (en banc). In <u>Fiore</u>, we held that the plain language of Rule 58, as well as Supreme Court precedent in <u>United States</u> v. <u>Indrelunas</u>, 411 U.S. 216 (1973), and <u>Bankers Trust</u>, 435 U.S. 381, dictated a mechanical application of the separate document requirement in all final orders. 960 F.2d at 234. We nevertheless concluded that an inference of waiver was also permitted where the parties failed to take any action in the case for three months or more:

> If we were to hold without qualification that a judgment is not final until the court issues a separate document, we would open up the possibility that long dormant cases could be revived years after the parties had considered them to be over. We hasten to shut off that prospect. . . . We believe it appropriate, absent exceptional circumstances, to infer waiver where a party fails to act within three months of the court's last order in the case. . . . A party wishing to pursue an appeal and awaiting the separate document of judgment from the trial court can, and should, within that period file a motion for entry of judgment. This approach will guard against the loss of review for those actually desiring a timely appeal while preventing resurrection of litigation long treated as dead by the parties.

960 F.2d at 235 (internal citation omitted). White's attempt to seek appellate review of the 1987 Dismissal, coming fourteen years after final action on his habeas petition, is precisely the type of "resurrection of litigation long treated as dead by the parties" that we sought to prevent with our holding in <u>Fiore</u>.

-10-

White nevertheless makes four arguments for why <u>Fiore</u> should not govern this case. First, he argues that our decision in <u>Fiore</u> post-dates the 1987 dismissal and therefore cannot be applied retroactively to his delay in seeking an appeal of that order. This argument is without merit. Even assuming that <u>Fiore</u> does not apply to White's delay from 1987 to 1992, the year in which <u>Fiore</u> was decided, White continued to let the case lie dormant another five years through 1997, and only sought appellate review in 2000.

Second, White contends that <u>Fiore</u> should not govern habeas cases, given the strong policy articulated by the Supreme Court in favor of reaching the merits of habeas corpus petitions. However, none of the cases cited by White to support this proposition[4] speak to the situation we have here, which involves an apparent abandonment of the right to appeal a habeas petition denial. Any preference for reaching the merits of a writ of habeas corpus goes to the question of whether or not the district court should have dismissed White's original petition with prejudice. Our focus here, however, is not the dismissal itself but the delay in appealing the dismissal. We see nothing in the precedent cited by White to convince us that a long delay in appealing the denial

_____

[4]<u>See</u> <u>Slack</u>, 529 U.S. at 487-88 (proscribing dismissal, as a second or successive petition under AEDPA, 28 U.S.C.§ 2244(b), of a habeas petition filed after a previous petition has been dismissed on exhaustion grounds); <u>Stewart</u> v. <u>Martinez-Villareal</u>, 523 U.S. 637 (1998) (finding that a timely-brought habeas claim is not a second or successive petition when it was previously dismissed only for lack of ripeness); <u>Lonchar</u> v. <u>Thomas</u>, 517 U.S. 314 (1996) (holding that court of appeals cannot dismiss first habeas petition for special ad hoc equitable reasons, including a mere delay, beyond the framework embodied in statutes, rules, and precedent).

of a habeas petition should be excused on the grounds that the merits cannot otherwise be reached.

Third, White suggests that <u>Fiore</u> is inconsistent with the policy and purposes of Rule 58 as articulated in the Supreme Court's rulings. Although White is not explicit in pointing us to the specific rulings he has in mind, we take him to be referring to <u>Indrelunas</u> and <u>Bankers Trust</u>, both of which directed courts to apply mechanically the Rule 58 separate document requirement. <u>Bankers Trust</u> additionally found, as we acknowledged in <u>Fiore</u>, 960 F.2d at 235, that relaxing the technicality of the rule was permissible in circumstances where a separate document was not entered but appellant nonetheless filed a notice of appeal without objection from the appellee. 435 U.S. at 386-88. Interpreting <u>Bankers Trust</u> to permit relaxation of the separate document requirement <u>only</u> in circumstances where it would effectuate the right of appeal, several of our sister circuits have rejected the <u>Fiore</u> approach as inconsistent with a mechanical application of Rule 58. <u>See</u> <u>Hammack</u> v. <u>Baroid Corp.</u>, 142 F.3d 266, 270 (5th Cir. 1998); <u>United States</u> v. <u>Haynes</u>, 158 F.3d 1327, 1330-31 (D.C. Cir. 1998); <u>Rubin</u> v. <u>Schottenstein, Zox & Dunn</u>, 143 F.3d 263, 270 (6th Cir. 1998) (en banc) (explaining that, on the Rule 58 question, the en banc court was convinced by panel's reasoning in vacated <u>Rubin</u> v. <u>Schottenstein, Zox & Dunn,</u> 110 F.3d 1247, 1250-53 (6th Cir. 1997), which included a footnote rejecting the <u>Fiore</u> waiver rule).

Unlike our sister circuits, we do not take the position that <u>Indrelunas</u> and <u>Bankers Trust</u> preclude all findings of waiver

<u>against</u> the appealing party. We specifically stated so in <u>Fiore</u>: "We see no conflict between this conclusion and Supreme Court precedent suggesting that Rule 58's technical requirements should be relaxed only to assist an appeal, not to foreclose one." 960 F.2d at 236 n.11. The separate document requirement was designed to assist a party actively seeking an appeal by eliminating confusion as to the definite date by which the party would have to file the notice of appeal. <u>See</u> <u>Bankers Trust</u>, 435 U.S. at 384-85 (stating that "[t]he separate document requirement was thus intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment of the district court only to have the appellate court announce later that an earlier document or entry had been the judgment . . . .") Its purpose was not to enable a party to appeal a decision years later, when that party had shown no inclination to do so in a timely fashion. We thus decline, especially in the context of a 14-year delay in appealing what was admittedly a final judgment, to revisit our holding that "[w]hen a party allows a case to become dormant for . . . a prolonged period of time, it is reasonable to presume that it views the case as over." <u>Fiore</u>, 960 F.2d at 236. <u>See also</u> <u>Falls Stamping and Welding Co.</u> v. <u>Int'l Union, United Auto. Workers,</u> 744 F.2d 521, 526 (6th Cir. 1984) (finding that, although facts were distinguishable, "[w]hat <u>can</u> be extracted from [<u>Bankers Trust</u>] and applied here is the general principle that the requirements of Rule 58 may be waived under certain circumstances" and that "in determining the appropriateness

-13-

of waiver, the Court in [Bankers Trust] emphasized a common-sense application of Rule 58 rather than a technical application as long as no parties have been misled").[5]

Finally, White asserts that his actions following the 1987 dismissal evidence the fact that he intended all along to challenge the court's order and therefore rebut any inference of waiver under Fiore. We have already detailed the limited actions White took regarding his habeas petition following his capture and return to prison. We put aside for now White's claim that he prepared and mailed a motion to vacate the dismissal in August of 1987, as we find that his claim, introduced only in his Second Motion for Reconsideration, is not admissible at this stage. See infra Part D. As to the evidence that White corresponded with the district court in 1990, we are unconvinced that his letters were sufficient to overcome an inference of waiver, especially when they were written some three years after the 1987 dismissal and were not followed up with any motions or appeals in federal court for another seven years. Similarly, even if we credit White's assertion that he initially thought he could revive his federal habeas petition only after exhausting his state remedies, he has

---

[5]Although not applicable to this appeal, we note that proposed amendments to Rule 58 of the Federal Rules of Civil Procedure and to Rule 4(a) of the Federal Rules of Appellate Procedure, submitted to the Supreme Court in November of 2001, adopt a rule similar to our Fiore holding. The proposed Rules 58 and 4(a) establish that, where a separate document is required but inadvertently not entered, the time for appeal will begin to run 150 days after the entry of the judgment or order in the civil docket. Federal Rulemaking, Pending Rules Amendments Awaiting Final Action, Amendments Submitted to the Supreme Court (November 2001), available at http://www.uscourts.gov/rules/supct1101.html.

provided no credible explanation for why he continued to delay seeking federal relief, even after this 1990 correspondence indicated an intention to do so.

Moreover, whatever confusion White may have had as to the status of the dismissal, it did not stem from the fact that the judgment was not entered on a separate document. Fiore's holding was anchored in the broader principle that judgment on a separate document should not be required where waiving it would not mislead or prejudice the appellee. Bankers Trust, 435 U.S. at 387; see also Fiore, 960 F.2d at 236 n.11 ("The three-month period generally should ensure that a failure to appeal was a matter of choice, not confusion . . . ."). Certainly nothing in White's actions suggest that he would have properly appealed the 1987 Dismissal but for the fact that he believed no final judgment triggering the running of the time for appeal had issued. As such, he was not "prejudiced or misled by lack of a separate document." Wang Labs., 926 F.2d at 96.

We therefore find that White has waived his right to judgment on a separate document, making his appeal of the 1987 Dismissal untimely. We do not reach the merits of the dismissal.

B. The 1999 Order

White's November 27, 2000 notice of appeal also stated that he wished to appeal from the September 27, 1999 order denying his motion for relief. Although White filed the First Motion for Reconsideration following the 1999 Order, the time for appealing the 1999 Order was not tolled because the motion for reconsideration, filed on October 29, 1999, post-dated the order by

-15-

more than ten days.  Fed. R. App. P. 4(a)(4)(A); Fed. R. Civ. P. 59.  White relies again on the lack of a separate document setting forth the 1999 order to argue that his 14 month delay in seeking the appeal should be excused.  A review of the record indicates that the order was indeed not entered on a separate document.  Although appellee has encouraged us to find that White also waived the separate document requirement as to the 1999 Order, neither White nor appellee have briefed us on whether <u>Fiore</u> can be applied to the facts as they relate to this order.  In particular, we note that the First Motion for Reconsideration referred to above was filed within three months of the 1999 Order.  Although White did not take action by "fil[ing] a motion for entry of judgment," we are not prepared to say, on the facts of this case, that White "fail[ed] to act within three months of the court's last order in the case" within the meaning of <u>Fiore</u>, 960 F.2d 236, and therefore decline to infer waiver.[6]

        Having determined that we have jurisdiction to review the 1999 Order, we easily affirm it.  We review the district court's refusal to grant favorable reconsideration for abuse of discretion.

---

[6]In <u>Fiore</u> itself, we found that the appellant had not waived the Rule 58 requirement where he followed up a June 27, 1990 decision, which was not entered on a separate document, with a July 17, 1990 motion seeking reconsideration, but waited until October 22, 1990 to move for entry of final judgment on the June 27 decision.  690 F.2d at 236-37.  <u>But</u> <u>see</u> <u>United</u> <u>States</u> v. <u>Podolsky</u>, 158 F.3d 12, 15-16 (1st Cir. 1998) (holding that <u>Fiore</u> waiver rule applied to a five-month delay in filing a notice of appeal on a decision, not entered on a separate document, denying a motion for return of property, even though appellant had sent a letter to the court within three months of the decision, asking that a belatedly filed response to the motion be considered a motion for reconsideration).

See <u>Mackin</u> v. <u>City of Boston</u>, 969 F.2d 1273, 1279 (1st Cir. 1992); <u>Parrilla-Lopez</u> v. <u>United States</u>, 841 F.2d 16, 19 (1st Cir. 1988); <u>Pagan</u> v. <u>Am. Airlines, Inc.</u>, 534 F.2d 990, 993 (1st Cir. 1976). We have already established that White waived the separate document requirement as to the 1987 Dismissal. Hence, for the same reasons that we now lack jurisdiction to review the 1987 Dismissal,[7] the district court properly determined that it would not, indeed could not, exercise its discretion to review the ten-year old dismissal.[8]

---

[7]Although White's 1997 motion sought relief from the 1987 Dismissal under both Rule 59 and Rule 60, it was untimely under either rule. Fed. R. Civ. P. 59(b) ("Any motion for a new trial shall be filed no later than 10 days after entry of the judgment"); Fed. R. Civ. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after the entry of the judgment."); Fed. R. Civ. P. 60(b) ("The motion shall be made within a reasonable time, and . . . not more than one year after the judgment, order, or proceeding was entered or taken."). Furthermore, we decline to consider White's argument that, because final judgment had not entered, his 1997 motion for relief from the 1987 Dismissal was analogous to a motion to set aside a default under rule 55(c), because we have already determined that the 1987 Dismissal was a final judgment, and because White made this argument for the first time on appeal.

[8]On appeal, White additionally takes issue with the district court's position that "[a]ssuming, without finding, that the court has the discretion to reconsider its 1987 decision, it is not appropriate to do so." 1999 Order at 4. White argued that the district court exercised its discretion without taking into account factors such as the merits of White's claim and the policy of the Commonwealth of Massachusetts for reinstatement of appeals following the return of a fugitive. He further argued that the district court inappropriately considered the fact that AEDPA, which post-dates White's petition by a decade, codified Congress's view that the public interest is best served when claims of unconstitutional conduct are reviewed promptly. <u>See</u> 1999 Order at 4-5. Having found that the district court properly based the 1999 Order on the untimeliness of White's motion for relief from the 1987 Dismissal, we also point out that it correctly put aside considerations such as the merits of White's habeas claim or policy issues. We need not address these additional arguments made by White.

We accordingly move on to the denials of White's First and Second Motions for Reconsideration for which timely appeals were filed.

C. Denial of the First Motion for Reconsideration

In his First Motion for Reconsideration, White argued that the 1999 Order rested on inaccurate assumptions of material fact concerning his knowledge and intentions following the 1987 Dismissal. White contended that his post-1987 dismissal conduct reflected an ignorance of legal procedure as well as misguided efforts to pursue an exhaustion of state remedies before returning to federal court. As such, he claimed, his conduct could not be interpreted as indicative of an intent to abandon the habeas process and waive the separate document requirement. In denying this motion, the district court held that any confusion on White's part as to the status of his case -- i.e. whether it was on hold pending exhaustion of state remedies -- could not be attributed to the absence of judgment having been entered on a separate document and reiterated its position that a delay of ten years before seeking post-judgment relief constituted waiver. 2000 Order at 4-5.

As already noted, we review the denial of a motion for reconsideration for abuse of discretion. See Mackin, 969 F.2d at 1279; Parrilla-Lopez, 841 F.2d at 19; Pagan, 534 F.2d at 993. In the context of determining our own jurisdiction to hear White's appeal, we discussed his actions following the 1987 dismissal and held that they did not counteract a finding of waiver. We

-18-

accordingly affirm the district court's denial of White's First Motion for Reconsideration.

D. Denial of the Second Motion for Reconsideration

White filed his Second Motion for Reconsideration, which requested the district court to reverse the denial of his First Motion for Reconsideration, on the grounds that he had in the interim discovered that, following his capture and return to Massachusetts, he had signed and mailed a motion to vacate the 1987 Dismissal (hereinafter "1987 Motion to Vacate"). The 1987 Motion to Vacate was allegedly prepared by a jail house lawyer, William Gilday, and signed and put in the prison mail system by White in August of 1987. White argued that this evidence showed that he had attempted to revive his habeas petition within a reasonable time frame and therefore contradicted the district court's finding of waiver.[9] White further argued that his failure to previously bring this information to the attention of the court should be excused by the fact that he had forgotten that he had filed the motion. In his affidavit in support of the Second Motion for Reconsideration, White stated that Gilday reminded him of the 1987 Motion to Vacate

_____

[9]Recognizing that the 1987 Motion to Vacate was apparently not received by the district court and was never docketed, White argued that under the "mailing is filing" rule, Houston v. Lack, 487 U.S. 266, 270 (1988), applicable to the efforts of pro se prisoners, his action should be taken as at least sufficient to rebut any inference of waiver under Fiore. Furthermore, although he allegedly mailed the 1987 Motion to Vacate more than three months after the 1987 Dismissal, he argued that the fact that it was filed within three months of his apprehension and return to Massachusetts was sufficient to overcome an inference of waiver. In light of our holding that the letter was not newly discovered evidence, discussed infra, we need not consider these arguments.

"several months [before November 2000]," after Gilday's transfer to the facility in which White was incarcerated. Gilday filed an affidavit stating that he found an unsigned copy of the 1987 Motion to Vacate in September 2000, after inventorying legal papers that had been seized in 1991 and returned to him the previous month, and that he brought the letter to White's counsel's attention in October 2000. Relying on these facts to argue that the 1987 Motion to Vacate was newly discovered evidence within the meaning of Rule 60(b) of the Federal Rules of Civil Procedure, White contended that the district court was therefore authorized to reconsider its denial of White's First Motion for Reconsideration.

The district court held that, notwithstanding White's alleged efforts in 1987 to move for reconsideration, the court's position that White had waived the separate document requirement would not change. First, the court explained, White had not been misled by the failure of the court to comply with the separate document requirement; if anything, the alleged 1987 Motion to Vacate evidenced that White had understood the 1987 Dismissal to be final. 2001 Order at 13. Second, the court pointed out that, even assuming White had filed the 1987 Motion to Vacate, the ten year gap between that motion and the 1997 motion for relief could still arguably constitute waiver. Id. Alternatively, the district court also concluded that the alleged 1987 Motion to Vacate was not "newly discovered evidence" within the meaning of Rule 60(b)(2), and that, moreover, the factual record did not support White's

assertion that he had indeed filed the motion. 2001 Order at 13-14.

Once again, we review the district court's denial of the Second Motion for Reconsideration for abuse of discretion. See Mackin, 969 F.2d at 1279; Parrilla-Lopez, 841 F.2d at 19; Pagan, 534 F.2d at 993. Succeeding on a motion under Rule 60(b)(2) requires the movant to demonstrate that the evidence could not have been discovered earlier by the exercise of due diligence. See Mitchell v. United States, 141 F.3d 8, 18 (1st Cir. 1998); see also Putnam Resources v. Pateman, 757 F. Supp. 157, 170 (D.R.I. 1991) (holding that even if the movant was not aware of the evidence at the time of the trial, the movant must be able to explain why the evidence was undiscoverable). Under this standard, we cannot say that the district court abused its discretion when it held that White "should have been aware of the existence of this 'evidence' and he cannot now persuasively assert that it has been 'newly' discovered." 2001 Order at 14. Furthermore, we defer to the district court's determination that, even if the 1987 Motion to Vacate could be considered newly discovered evidence, it would not have aided White's cause. In the context of a delay of multiple years, the alleged mailing of one motion, which apparently was never received by the court and never mentioned in White's subsequent correspondence with the court, is hardly compelling enough to warrant re-opening a long dormant case, especially where reconsideration is discretionary. We see no abuse of discretion

-21-

here and affirm the denial of White's Second Motion for Reconsideration.

## III.

We accordingly hold that we lack jurisdiction to review the 1987 Dismissal and affirm the remaining three district court orders before us on appeal.

Proposed Amendments to Rule 58 of the Federal
Rules of Civil Procedure

Rule 58. Entry of Judgment

(a) Separate Document.

(1) Every judgment and amended judgment must be
set forth on a separate document, but a separate
document is not required for an order disposing of
a motion:

(A) for judgment under Rule 50(b);

(B) to amend or make additional findings of fact
under Rule 52(b);

(C) for attorney fees under Rule 54;

(D) for a new trial, or to alter or amend the
judgment, under Rule 59; or

(E) for relief under Rule 60.

(2) Subject to Rule 54(b):

(A) unless the court orders otherwise, the clerk
must, without awaiting the court's direction,
promptly prepare, sign, and enter the judgment
when:

(i) the jury returns a general verdict,

(ii) the court awards only costs or a sum certain,
or

(iii) the court denies all relief;

(B) the court must promptly approve the form of
the judgment, which the clerk must promptly enter,
when:

(i) the jury returns a special verdict or a
general verdict accompanied by interrogatories, or

(ii) the court grants other relief not described in Rule 58(a)(2).

(b) Time of Entry. Judgment is entered for purposes of these rules:

(1) if Rule 58(a)(1) does not require a separate document, when it is entered in the civil docket under Rule 79(a), and

(2) if Rule 58(a)(1) requires a separate document, when it is entered in the civil docket under Rule 79(a) and when the earlier of these events occurs:

(A) when it is set forth on a separate document, or

(B) when 150 days have run from entry in the civil docket under Rule 79(a).

(c) Cost or Fee Awards.

(1) Entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees, except as provided in Rule 58(c)(2).

(2) When a timely motion for attorney fees is made under Rule 54(d)(2), the court may act before a notice of appeal has been filed and has become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.

(d) Request for Entry. A party may request that judgment be set forth on a separate document as required by Rule 58(a)(1).


Proposed Amendments to Rule 4(a) of the Federal Rules of Appellate Procedure

Rule 4. Appeal as of Right -- When Taken

(a) Appeal in a Civil Case.

        *****

(7) Entry Defined.

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58(a)(1) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a); or

(ii) if Federal Rule of Civil Procedure 58(a)(1) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

- the judgment or order is set forth on a separate document, or

- 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79(a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a)(1) does not affect the validity of an appeal from that judgment or order.

\*\*\*\*\*

Federal Rulemaking, Pending Rules Amendments Awaiting Final Action, Amendments Submitted to the Supreme Court (November 2001), available at http://www.uscourts.gov/rules/supct1101.html.