Joseph W. and Helen B. TEAGUE, et al., Plaintiffs,

v.

Jim BAKKER, et al., Defendants.

No. CIV. 3:87CV514.

United States District Court, W.D. North Carolina, Charlotte Division.

July 16, 2002.

See, also, 139 F.3d 892.

Jonathan Wallas, C. Margaret Errington, Ferguson, Stein, Wallas, Gresham & Sumter, P.A., Charlotte, NC, Fred H. Moody, Jr., McKeever, Edwards, Davis & Hays, P.A., Bryson City, NC, Wendell R. Bird, Law Offices of Wendell R. Bird, Atlanta, GA, Samuel F. Trussell, Thomas T. Anderson, Thomas T. Anderson & Associates, Indio, CA, Paul L. Whitfield, Charlotte, NC, William J. Chandler, Charlotte, NC, for plaintiffs.

James H. Toms, James H. Toms & Associates, P.A., Hendersonville, NC, Lamar Gudger, Gudger & Gudger, Asheville, NC, Nelson M. Casstevens, Jr., Casstevens, Hanner, Gunter & Gordon, P.A., Charlotte, NC, Melvin Belli, Belli, Belli, Brown, Monzione, Fabbro & Zakaria, San Francisco, CA, W. Ryan Hovis, Rock Hill, SC, Michael E. Quiat, Uscher, Quiat & Usher, Hackensack, NJ, Ben Cotten, Cotten Day & Selfon, Washington, DC, Angela S. Cerini, Uscher Quiat & Uscher, Paramus, NJ, James T. Williams, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, Greensboro, NC, Van C. Stone, Wichita, KS, James E. Walker, Kennedy, Covington, Lobdell & Hickman, Charlotte, NC, Griffin B. Bell, King & Spalding, Atlanta, GA, for defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** came before the Court on the motion of class counsel, filed December 20, 2001, for an additional award of costs, pre-judgment interest, post-judgment interest and attorneys' fees. By Orders entered on January 9, 2002, February 25, 2002, and March 18, 2002, the undersigned sought further clarification of the requests. In addition, a hearing was conducted on May 1, 2002. For reasons stated herein, the motion is denied.

### I. PROCEDURAL HISTORY

In 1987, the law firms of Bird & Associates and Thomas T. Anderson & Associates brought this class action on behalf of "approximately 160,000 individuals who purchased 'Lifetime Partnerships' from an entity known as 'PTL' entitling them to a short stay annually in a hotel at a vacation retreat constructed by PTL." *Teague v. Bakker*, 35 F.3d 978, 981 (4th Cir.1994). As is now well known, instead of actually building the retreats, "Bakker used partnership funds to pay operating expenses of the PTL and to support a lavish lifestyle." *Id.*, at 982. Ultimately, the entire PTL "empire" collapsed. In the class action, Plaintiffs asserted claims of federal and state Racketeer Influenced and Corrupt Organizations (RICO) violations, common law fraud, South Carolina Time Share Act (SCTSA) violations, and gross negligence.

Before trial, Defendants Roe Messner, Messner Enterprises, Commercial Builders of Kansas, Inc., and William J. Spears were dismissed from the case. In the fall of 1990, United States District Court Judge James B. McMillan presided at an eight week trial against Defendants James Bakker, David Taggart, Aimee Cortese, and two accounting firms, Deloitte, Haskins & Sells (DH & S) and Laventhol &

Horwath. On November 21, 1990, after almost one month of trial, counsel for Laventhol & Horwath announced that the firm had filed for bankruptcy protection and received a stay of all proceedings against that firm. The trial continued against the remaining Defendants. On December 5, 1990, prior to submitting the case to the jury but after the evidence of all parties, the trial court granted the Defendants' motion for a directed verdict against the Plaintiffs on their securities fraud claims, finding that, as a matter of law, timeshares were not securities. The jury subsequently absolved DH & S, Taggart and Cortese of any liability, finding only Bakker liable for common law fraud and awarding compensatory damages of $129,618,000 and punitive damages in the same amount. The judgment against Bakker was uncollectible.

The Plaintiffs appealed the directed verdict in favor of the Defendants concerning securities fraud and the Fourth Circuit reversed, stating that whether or not the timeshares were securities was an issue of fact for the jury to determine. *Id.* The Circuit also ruled, however, that the trial court's grant of a directed verdict as to DH & S was proper.

> Despite our conclusion that a jury question exists as to whether the LTPs [lifetime partnerships] constituted "securities," however, we must affirm the district court's dismissal of plaintiffs' claim that DH & S aided and abetted Bakker's alleged federal securities fraud violation. In its recent opinion in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119[ ] (1994), the Supreme Court held that Section 10(b) does not support claims for aiding and abetting. On this basis, then, we affirm the district court's judgment as to this count.

> In summary, we reinstate plaintiffs' securities fraud claims under federal and state law against Bakker, but we affirm the dismissal of plaintiffs' federal and state securities fraud claims against DH & S.

*Id.,* at 991–92.

On remand from the Circuit, the case was reassigned to the undersigned due to Judge McMillan's death. Despite the plain language of the Circuit's opinion, class counsel contended the securities fraud claims were remanded for a new trial against all Defendants, not just Bakker. On two separate occasions, the undersigned ruled that only Bakker remained in the case as a Defendant and certified the orders for interlocutory appeal. **Orders, filed August 30, 1995 and March 22, 1996.** On two separate occasions, the Fourth Circuit denied the Plaintiffs' petition for a certificate of interlocutory appeal. **Orders, filed October 11, 1995 and April 15, 1996.** At the second trial in 1996, the jury found that the timeshares were not securities, thus, finding against the Plaintiffs. That verdict, and the rulings of the undersigned in the case, were affirmed by the Fourth Circuit on appeal. *Teague v. Bakker,* 139 F.3d 892 (table), 1998 WL 168876 (4th Cir.1998).

## II. THE PREVIOUS AWARD OF COSTS

While the appeal from the first trial was pending, Laventhol & Horwath entered into a settlement agreement with the Plaintiff Class to resolve the claims pending in its bankruptcy proceeding in the Southern District of New York. In January 1993, Judge McMillan conducted a hearing on the proposed settlement which he subsequently approved. Under the terms of the settlement, Laventhol & Horwath agreed that the PTL Class claim would be allowed in the amount of $45

million in return for which the Class withdrew its objections to the confirmation of the Chapter 11 Reorganization. **Exhibit A,** *attached to* **Response to the Court's Order of February 25, 2002, filed March 8, 2002.** Laventhol & Horwath also agreed to take all steps necessary to ensure that the Class would be able to participate in the "Insurance Trust," the firm's malpractice and excess liabilities insurance proceeds. *Id.* The settlement agreement provided a ten year period within which the payments would be made to the Class. *Id.* Although not clear, it appears that all such payments were to be made from the insurance proceeds.

At the same time that he approved the settlement, Judge McMillan also heard the motion of class counsel for an award of costs and expenses. Notice of both the proposed settlement and the request of counsel for an award of costs and expenses was provided to the Class by publication. **Exhibit 2,** *attached to* **Brief in Support of Plaintiffs' Motion for Remaining Costs, Prejudgment Interest, and Attorney Fees [Plaintiffs' Brief], filed December 20, 2001.** No objection was received from class members as to either the settlement or the proposed award of costs. By Memorandum and Order filed February 12, 1993, Judge McMillan made the following findings:

> Plaintiffs' counsel itemize costs and expenses in excess of $2.7 million.

> .    .    .    .    .

> It is important to emphasize that plaintiffs seek no attorney fees at this [time] for the firms of Thomas T. Anderson and Associates or Wendell Bird's law firm. . . . What plaintiffs' lawyers seek is a return of the out-of-pocket expenses advanced by Mr. Anderson to finance the litigation.

> .    .    .    .    .

> [I]t is entirely appropriate that any monies recovered on behalf of the class

through the efforts of plaintiffs' lawyers be first devoted to the reimbursement of reasonable costs and expenses.

> .    .    .    .    .

> [I]t was essential that plaintiffs retain bankruptcy counsel in New York and such representation led directly to the Laventhol settlement.

> .    .    .    .    .

> It is therefore ordered that plaintiffs' counsel, Thomas T. Anderson and Associates be awarded the sum of $2,715,212.40 as costs and expenses incurred in this case. Said sum should be paid directly to the Anderson firm out of the recoveries made from the Laventhol settlement previously approved by this Court. If and when the amount of the funds received by the plaintiffs from the Laventhol settlement exceeds $2,725[,]323.40, said sums are to be placed by plaintiffs' counsel in an interest bearing trust account and maintained in such account until further order of this Court. This Court will entertain at that time any further motions by plaintiffs' counsel for the award of additional costs and expenses, for an award of attorney's fees, or for distribution of the proceeds to the plaintiffs.

**Exhibit 1, Memorandum and Order Approving Plaintiffs' Counsel's Request for Award of Litigation Costs and Expenses, filed February 12, 1993,** *attached to* **Plaintiffs' Brief, at 4–5, 6, 7, 10.**

Judge McMillan's Memorandum and Order did not contain an award of pre-judgment or post-judgment interest. During the next ten years, yearly payments were received from the settlement except for the years 1995 and 1997. Those payments and their disbursements were as follows:

1. The sum of $61,033.31 received on December 22, 1992, was disbursed in

two payments to Thomas T. Anderson and Gilardi & Co. (to pay for the class notice mailing).

2. The sum of $111,251.69 received on September 29, 1993, was disbursed on that same date to Thomas T. Anderson.

3. The sum of $1,380,696.51 received on April 1, 1994, was disbursed on April 5, 1994, to Thomas T. Anderson.

4. The sum of $151,203.91 received on February 9, 1996, was disbursed on that same date to Thomas T. Anderson.

5. The sum of $107,025.11 received on September 8, 1998, was disbursed on October 19, 1998, to Thomas T. Anderson.

6. The sum of $937,954.43 was received on April 9, 1999. On June 11, 1999, $745,312.32 was disbursed to Thomas T. Anderson.

7. The sum of $110,152.81 was received on April 17, 2000, and no portion thereof has been disbursed.

8. The sum of $930,073.90 was received on April 23, 2001, and no portion thereof has been disbursed.

Exhibits 2 and 3, *attached to* **Response to Court's Order of March 18, 2002, filed April 2, 2002.** A total amount of $3,789,391.67 has been received from the settlement with Laventhol & Horwath and, of that amount, Thomas T. Anderson has been disbursed the sum of $2,556,522.85.[1] *Id.* Due to a bookkeeping error, the sum of $3,925.83 which should have been disbursed as well has not been disbursed. *Id.*, at **Exhibit 4.** The Court accepts this explanation and finds that this sum should be disbursed to Thomas T. Anderson. Thus, the total amount of disbursements to Thomas T. Anderson should be the sum of $2,560,448.68 and the principal amount currently on hand for disposition is the sum of $1,228,942.99.

In response to an inquiry from the undersigned concerning the interest earned on these sums, counsel disclosed that funds "were initially placed in the Client Trust Account, which is required to have interest payable to the State Bar Fund." *Id.* These funds should have been placed in an interest bearing account, in accordance with Judge McMillan's Memorandum and Order, in June 1999 when it was deemed that the amount of costs approved by Judge McMillan had been received.[2] Although it

---

1. Although Judge McMillan approved a total of $2,725,323.40 for disbursement before counsel was required to place the settlement sums in an interest bearing account, it was ascertained that bills totaling $164,874.72 which had been submitted to him for approval ultimately did not have to be paid. Thus, counsel did not disburse this sum to Mr. Anderson.

2. Thus, on June 11, 1999, the sum of $192,642.11 should have been placed in an interest bearing account pursuant to which interest should have accrued for the benefit of the Class. On April 17, 2000, the sum of $110,152.81 was added to the account for a total of $302,794.94 on which interest should have accrued. On April 2001, the sum of $903,073.90, almost one million dollars, was added to the account. Thus, as of that date, interest should have begun to accrue on the total of $1,205,868.82, accrual which would have continued through the date of this Order in mid–2002. The only information provided about earned interest was provided for the months of January, February and March 2002, during which interest in the amounts of $1,807, $1,263 and $1,264 was earned on a principal sum of $1,057,583.04 (the remainder of the total is held in a different account). *See* **Exhibit4a,** *attached to* **Plaintiffs' Response to Court's Order of March 18, 2002.** The sums lost because of the failure of class counsel to place the funds in an interest bearing account for the benefit of the Class since 1999 must be significant. No information was provided as to the amount of interest paid to the California State Bar as a result of the mistaken placement of the funds in the law firms' escrow accounts.

has not been disclosed exactly when the funds were placed in an interest bearing account, the total amount of interest which has been earned to date is $28,982.69. *Id.* The total amount of principal and interest subject to disposition is $1,257,925.68.

## III. THE CURRENT MOTION

Before addressing the request for an award of costs, interest and attorneys' fees, the Court notes that neither the individual class representatives nor the class itself were notified that counsel sought to devote the entire remainder of the Laventhol & Horwath settlement to attorneys' fees and/or interest on the previous award of costs. *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1130 (7th Cir.1979) (Notice of the extent of attorneys' fees sought is essential in a class action.). Indeed, even the Court's inquiry as to notice in the Order of January 9, 2002, did not provoke counsel to notify the class representatives. Finally, on April 19, 2002, counsel wrote to the class representatives in the form of a "status report" and enclosed copies of the pleadings involved in this motion. However, they still were not notified of the date of the hearing. Moreover, it was not until the final submission from counsel that it was disclosed that the sums had not been placed, until an undisclosed time in the recent past, in an interest bearing account for the benefit of the Class.

"[T]he danger inherent in the relationship among the class, class counsel, and defendants 'generates an especially acute need for close judicial scrutiny of fee arrangements' in class action settlements." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 730 (3rd Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 202, 151 L.Ed.2d 143 (2001) (quoting *In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819 (3rd Cir. 1995)). Even after settlement, the Court retains a continuing duty to act on behalf of the class. *Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 440 (D.Md.1998) (quoting *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1306 (4th Cir.1978)). "[T]he court's oversight function serves not only to detect instances of 'the actual abuse [that potential attorney attorney-class conflicts] may cause, but also [the] potential public misunderstandings they may cultivate in regard to the interests of class counsel.'" *In re General Motors Corp., supra,* at 820 (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 225 (2nd Cir.1987)) (other citations omitted). In fact, it has been stated that "district judges [are required] to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions. [C]ourts have gone so far as to term the district judge … a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279–80 (7th Cir.2002). Although the settlement phase of this case has passed, it nonetheless remains true that "[w]hen a lawyer lays claim to a portion of the kitty, he becomes a real party in interest…." *Id.,* at 288. In this regard, the undersigned first concludes that class counsel should have notified the class representatives when the motion was first filed in December 2001 that they sought an award of attorneys' fees, costs and interest in an amount that would deplete the balance of the common fund collected. *Id.,* at 286 (**"To begin with, we disapprove the practice … of … permitting the submission of fee applications *in camera*. To conceal the applications and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge."**). Indeed, it has been said that the lack of

such notice is alone sufficient reason to deny a request for attorneys' fees. *Goldenberg*, 33 F.Supp.2d at 441.

### A. The request for pre-judgment and post-judgment interest.

■ The Court will therefore address the motion in the manner dictated by precedent. As previously noted and conceded by class counsel, Judge McMillan did not include an award of interest in his Memorandum and Order of February 12, 1993. **Plaintiffs' Brief, at 9 ("Judge McMillan did not address the issue of interest....").** The settlement agreement with Laventhol & Horwath made no mention of interest. The retainer agreements entered into with the class representatives contain the following language:

> I authorize my attorneys to employ investigators and expert consultants, and to incur any other necessary costs to prosecute this claim. In the event of recovery, the costs will be deducted from the total claim before calculating the attorneys' fee.... If there is no recovery, no attorneys' fee is owed by me.... "No attorneys' fees" refers only to those fees charged by attorneys for their legal services.... *For court costs and other additional expenses of legal action the client is required to be ultimately responsible.*

**Exhibit B, Teague Attorney–Client Agreement signed May 13, 1989, *attached to* Plaintiffs' Response, filed March 8, 2002 (emphasis added).**

> "If there is no recovery, no attorneys' fee is owed *and no other amount is owed by me.*"

**Attorney–Client Contract signed December 7, 1987, *attached to id.* (emphasis added).**

> I authorize my attorneys to employ investigators and expert consultants, and to incur any other necessary costs to prosecute this claim. In the event of

recovery, the costs will be deducted from the total claim before calculating the attorneys' fee.... *If there is no recovery, no attorneys' fee is owed and no other amount is owed by me.*

**Barker Attorney–Client Contract signed December 6, 1987, *attached to id.* (emphasis added).**

> I authorize my attorneys to employ investigators and expert consultants, and to incur any other necessary costs to prosecute this claim. In the event of recovery, the costs will be deducted from the total claim before calculating the attorneys' fee.... *If there is no recovery, no attorneys' fee is owed. I understand that under applicable professional rules of conduct I must bear ultimate responsibility for costs in the case (but not for any attorneys' fees).*

**Tucker Attorney–Client Contract signed December 3, 1988, *attached to id.* (emphasis added).**

Despite the inconsistency in the language, it is clear that costs were the responsibility of the clients and would be paid prior to any calculation of attorneys' fees. While all of these agreements mention the repayment of costs, none of them contains a provision for interest, either pre-judgment or post-judgment.

Class counsel claims it is entitled to both pre-judgment and post-judgment interest pursuant to 28 U.S.C. § 1961. However, the cases cited in counsel's brief deal only with pre-judgment interest on damages awards, not awards of costs. In fact, the undersigned has been unable to find a case in which pre-judgment interest was imposed on an award of costs, as opposed to compensatory damages. This is not surprising in view of the fact that pre-judgment interest has historically been considered a portion of a successful plaintiff's compensation for injury. *Osterneck v.*

*Ernst & Whinney*, 489 U.S. 169, 174, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989).

Although Congress has enacted a statute governing the award of post[-]judgment of interest in federal court litigation, there is no comparable legislation regarding pre[-]judgment interest. Far from indicating legislative determination that pre[-]judgment interest should not be awarded, however, the absence of a statute merely indicates that the question is governed by traditional judge-made principles.

*City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 194, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995). Moreover, Judge McMillan did not award such interest and his Order remains the law of the case as to this issue. *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 942 F.Supp. 1199 (N.D.Ill.1996). The undersigned therefore concludes that an award of pre-judgment interest is not available. *S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist.*, 60 F.3d 305, 307 (7th Cir.1995) (**Pre-judgment interest is normally considered an element of the damages judgment itself.**)

■ Class counsel also seek an award of post-judgment interest pursuant to 28 U.S.C. § 1961, claiming that such an award is "mandatory" by virtue of the language of the statute: "Interest *shall be allowed on any money judgment* in a civil case recovered in a district court." Counsel do not dispute that § 1961 applies only to "judgments;" instead, they contend that Judge McMillan's Memorandum and Order qualifies as a final judgment.

However, Federal Rule of Civil Procedure 58 requires that "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a) [which provides for docketing thereof by the clerk of court]." Judge McMillan's ten page Memorandum and Order contains his legal reasoning and factual findings; and, as such, it does not qualify as a separate judgment of costs.[3] *Barber v. Whirlpool Corp.*, 34 F.3d 1268 (4th Cir.1994) (**Eleven page document setting forth findings of fact and conclusions of law and addressing post-trial motions did not satisfy Rule 58's separate document requirement.**); *Block v. Allstate Insurance Co.*, 202 F.3d 257 (table), 1999 WL 1267346 (4th Cir.1999) (**Where the court did not enter its order denying a motion for costs on a separate document, there was no compliance with Rule 58 and no judgment had been filed.**); *Baker v. Mercedes Benz of North America*, 114 F.3d 57 (5th Cir.1997) (**Opinion and order did not meet Rule 58's separate document requirement although the opinion ended with the words "This is a final judgment."**); *Hughes v. Halifax County Sch. Bd.*, 823 F.2d 832, 835 (4th Cir.1987) (**Rule 58 is to be strictly applied without regard to the equities of the case and although a very terse order may operate as a judgment, an order that contains the reasoning of the court may not.**); *accord, Kidd v. District of Columbia*, 206 F.3d 35 (D.C.Cir. 2000), *cert. denied*, 531 U.S. 1071, 121 S.Ct. 761, 148 L.Ed.2d 663 (2001) (**If the order is sufficiently terse it may satisfy Rule 58.**); *Radio Television Espanola S.A. v. New World Entertainment Ltd.*, 183 F.3d 922 (9th Cir.1999); *Puerto Rico Aqueduct & Sewer Auth. v. Constructora Lluch, Inc.*, 169 F.3d 68 (1st Cir.1999).

"[B]ecause motions for [costs] are separate from and collateral to any decision on the merits, they should be accorded

---

**3.** The same conclusion is reached if reference is made to Rule 54 which concerns a judgment of costs. That rule provides that a "judgment" "includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings." **Fed.R.Civ.P. 54(a).**

the same dignity under Rule 58 as judgments on the merits. Just as a judgment on the merits must always be accompanied by a separate document, so should a district court's order denying or granting a motion for [costs]." The district court's order of [December 1993] was not accompanied by a separate document constituting the Rule 58 judgment, and the order itself could not qualify as the Rule 58 judgment, because it contained a discussion of the court's reasoning and legal analysis.... Nothing in the record ... indicates that plaintiffs ever raised the issue of pre[-]judgment [or post-judgment] interest to the district court.

*Stichting Mayflower Recreational Fonds v. Newpark Res., Inc.,* 9 Fed.Appx. 932, 934, 936 (10th Cir.2001) (quoting *Deboard v. Sunshine Mining & Ref. Co.,* 208 F.3d 1228, 1237 (10th Cir.2000)). The undersigned therefore concludes that counsel may not recover post-judgment interest "because the District Court's order in the instant case did not award post-judgment interest on its ... award of taxable costs, and [Plaintiffs] [did] not challenge that ruling." *Eaves v. County of Cape May,* 239 F.3d 527, 539 n. 13 (3rd Cir.2001); *accord, In re Burlington N., Inc.,* 810 F.2d 601, 609–610 (7th Cir.1986). Section 1961 only applies to judgments and the order in this case does not qualify as a judgment. *Hull v. United States,* 971 F.2d 1499 (10th Cir.1992) **(Interest cannot accrue pursuant to § 1961 without a judgment pursuant to Rule 58.);** *Jenkins v. State of Mo.,* 931 F.2d 1273, 1277 (8th Cir.1991) **("The prevailing party is not entitled to post-judgment interest on an award [of costs] unless the court specifically enters such a judgment." (Lay, C.J., concurring)).** "[T]he plain language of Rule 58, as well as

Supreme Court precedent, dictate[s] a mechanical application of the separate document requirement in all final orders.... [Counsel's] attempt [to obtain post-judgment interest], coming [nine] years after final action ..., is precisely the type of 'resurrection of litigation long treated as dead by the parties' that [the courts] sought to prevent'...." *White v. Fair,* 289 F.3d 1, 6 (1st Cir.2002) (quoting *Fiore v. Washington County Cmty. Mental Health Ctr.,* 960 F.2d 229, 235 (1st Cir.1992)).

Assuming *arguendo* that Judge McMillan's Memorandum and Order does qualify as a final judgment, counsel still do not avail. The Order is silent as to interest; thus, any motion to alter or amend it to include such an award must have been made within ten days of its entry.[4] **Fed.R.Civ.P. 59(e).** "[I]n *Osterneck v. Ernst & Whinney,* [*supra* ], the Court held that a post[-]judgment motion for discretionary pre[-]judgment interest was governed by Rule 59(e)." *Kosnoski v. Howley,* 33 F.3d 376, 378 (4th Cir.1994). "Thus, if the district court's original judgment order did not mention an award of pre-judgment and post-judgment interest, [counsel's] later motion to fix interest clearly would be governed by *Osterneck* and would be considered untimely filed." *Id.* "When a district court's original judgment does not mention an award of interest, then a later motion to fix interest would be governed by the rationale found in *Osterneck,* as the motion would amount to an original request for interest." *Pogor v. Makita U.S.A., Inc.,* 135 F.3d 384, 388 (6th Cir.1998); *accord, Hodge ex rel. Skiff v. Hodge,* 269 F.3d 155, 157 (2nd Cir.2001); *Trustmark Ins. Co. v. Gallucci,* 229 F.3d 1134 (table), 2000 WL 1160443 (1st Cir. 2000); *Rutherford v. Harris County, Tex.,*

---

4. This ten day time period is in contrast with Rule 60(a) which provides that clerical mistakes in judgments or orders arising from oversight or omission may be corrected by the court "at any time." **Fed.R.Civ.P. 60(a).**

197 F.3d 173, 190 (5th Cir.1999) (**Where the district court's findings of fact and conclusions of law contain no mention of interest, Rule 60(a) could not be used because any correction would be substantive in nature.**); *United States v. Whedbee*, 21 F.3d 426 (table), 1994 WL 142456 *3 (4th Cir.1994); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2nd Cir.1994). The undersigned therefore concludes that counsel's motion for pre-judgment and post-judgment interest should be denied.

## B. The request for an additional award of costs.

■ The Court first addresses the request that the Anderson law firm recover interest paid on a line of credit in the form of an additional award of costs.

> [I]n order to fund the PTL litigation, while operating this law firm, Thomas T. Anderson established a line of credit in the amount of $1 million dollars with Eldorado Bank in California. The terms of that line of credit provided for repayment, plus interest at the rate of prime plus 1 percent. That line of credit was later paid off *via* a loan in the amount of $1.2 million [ ] in July of 1989 by the First Los Angeles Bank. The terms of that loan [re]quired interest at a payment rate of prime plus 1.25 percent.... Principal and interest payments continued on the loan until 1995, when other arrangements were made.... Total interest paid for both loans totaled $603,123.00.

**Exhibit 4, Affidavit of Samuel Trussell,** *attached to* **Brief in Support.** No explanation of what the "other arrangements" were has been provided. Nor has any

documentation been provided to support the claim that $603,123.00 in interest was paid as a result of a line of credit to sustain this litigation. The Court is therefore unable to conclude that "other arrangements" could not have been made prior to 1995. Nor is the undersigned able to ascertain from the pleadings that this line of credit was used solely for the PTL litigation as opposed to general use for other firm financial needs.

Moreover, the only fund from which additional costs may be paid is that accumulated by virtue of the bankruptcy settlement with Laventhol & Horwath. The PTL Class claim was based on "allegations of malpractice, professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, and/or excess accountants errors and omissions which proximately caused and/or resulted in damage and/or injury to the PTL Class...." **Letter Agreement of August 24, 1992 from Claude Montgomery to Joseph Moldovan,** *attached to* **Response filed March 8, 2002; accord, Order of Hon. Cornelius Blackshear, United States Bankruptcy Court Judge, dated August 24, 1992,** *attached to* **Response, at 10-11.** Thus, the settlement encompassed the Class's common law claims, as opposed to statutory causes of action such as securities violations. As a result, the authority for an award of costs would be Federal Rule of Civil Procedure 54(d)(1)[5] and 28 U.S.C. § 1920. *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 371 (4th Cir.2001) (**"[W]e need not determine now whether the 'costs of the action' referenced in [the Lanham Act] are limited to those mentioned in § 1920 because the award of ... costs**

---

**5.** That Rule provides in pertinent part that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs...." For purposes of this portion of the discussion, the Court assumes *arguendo* that the Class was a prevailing party.

under the Lanham Act is committed to the sound discretion of the Court.... The district court was required to award [plaintiff], as the prevailing party, *no more than those costs required by § 1920.*") (emphasis added) (internal citations omitted). "Under Rule 54(d) and section 1920, 'district courts have broad discretion to determine whether and to what extent' to award costs to prevailing parties. District courts *may not, however, award costs not authorized by statute.*" *Barber v. Ruth,* 7 F.3d 636, 644 (7th Cir. 1993) (quoting *SK Hand Tool Corp. v. Dresser Ind., Inc.,* 852 F.2d 936, 943 (7th Cir.1988)) (**emphasis added**) (**other citations omitted**); *accord, United States v. Merritt Meridian Const. Corp.,* 95 F.3d 153, 171 (2nd Cir.1996); *Cofield v. Crumpler,* 179 F.R.D. 510 (E.D.Va.1998). Section 1920 provides in pertinent part:

A judge ... of any court of the United States may tax as costs the following:

1. Fees of the clerk and marshal;

2. Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

3. Fees and disbursements for printing and witnesses;

4. Fees for exemplification and copies of papers necessarily obtained for use in the case;

5. docket fees under section 1923 of this title;

6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. There is no provision in § 1920 for an award of costs which encompasses the interest accrued on a line of credit incurred by the law firm of class counsel in order to advance litigation costs. "Expenses that are not on the statutory list must be borne by the party incurring them." *Collins v. Gorman,* 96 F.3d 1057, 1058 (7th Cir.1996). The undersigned is therefore without authority to make such an award.

Moreover, even if the undersigned construed the retainer agreements with the class as encompassing the recovery of such costs, it would not be allowed.[6] As noted above, the request for interest approaching a half of a million dollars is not supported by any documentation except the vague affidavit of Samuel Trussell. In addition to the failure to specify that the line of credit was used solely for the class action, there is no proof of the actual interest rates imposed on the line of credit. Counsel states merely that "prime plus one percent" interest was charged but does not state the exact prime rate during the years at issue. As aptly noted by the *Collins* court, "we cannot make head nor tail of the bill of costs ... and [counsel] have declined to fill us in...." *Id.* Even where the recovery of costs is the subject of a contract between the parties, the burden of proving that the requested costs are reasonable and necessary remains on the party seeking the award. *Renfrow v. Draper,* 232 F.3d 688, 695 (9th Cir.2000). "This court is not required, and in fact is not allowed, to meet plaintiff[s'] burden for [them], especially when speculation is involved." *Thompson v. Standard Ins. Co.,* 167 F.Supp.2d 1195, 1199 (D.Or.2001); *accord, Allison v. Bank One–Denver,* 289

---

**6.** Counsel did not argue the third manner in which this interest might have been awarded as costs. Under the common fund doctrine, the attorney whose efforts create the fund is entitled to recover from the fund the costs of

litigation. *In re General Motors Pick–Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d, at 820 n. 39. As will be discussed *infra,* the undersigned does not find that the efforts of class counsel produced the common fund.

F.3d 1223 (10th Cir.2002); *Gray v. Metts,* 203 F.Supp.2d 426, 430–31 (D.Md.2002); *compare, In re Orthopedic Bone Screw Prod. Liab. Litig.,* 2000 WL 1622741 \*9 n. 21 (E.D.Pa.2000) **(Pursuant to a pretrial order and protocol established by the trial court, members of the plaintiffs' legal committee (PLC) were allowed to obtain lines of credit to fund the litigation. A common fund was obtained through settlement and the court appointed auditors to review all requests for attorneys' fees and costs. In awarding as costs the interest incurred on lines of credit, the court noted that the auditor had used "a variable rate of interest ... to calculate interest based on the actual interest rates banks charged certain PLC members for lines of credit to fund this litigation.").**

To the contrary, Wendell Bird has attached detailed information to support additional costs incurred between January 1992 and June 1999. While some of those costs would not be recoverable pursuant to § 1920, the retainer agreement provides ample support that such expenses and their recovery were contemplated by the parties. *See, e.g.,* **Attorney–Client Contract between Karen Tucker and Wendell Bird dated December 3, 1989 ("I understand that under applicable professional rules of conduct I must bear ultimate responsibility for costs in the case....").** These costs were reasonable and necessary to the prosecution of the case. **Exhibits 5 and 7** *attached to* **Plaintiffs' Brief.** The Court will therefore approve an additional payment of $15,980.25 in costs. Mr. Bird also claims costs in the amount of $47,270.66 which were "unintentionally omitted from those claimed prior to Judge McMillan's Order." **Plaintiffs' Brief, at 3.** However, there is nothing before the undersigned from which a determination of reasonableness or necessity can be made and the request is therefore denied.

## C. The request for an award of attorneys' fees.

■ Class counsel request an award of attorneys' fees equal to the balance of the fund collected from the Laventhol & Horwath settlement, that is, $1,228,942.99. In class actions, there are

> two primary methods for calculating attorneys' fees: the percentage-of-recovery method and the lodestar method. "The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" "The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation."

*In re Cendant Corp.,* 243 F.3d at 732 **(quoting** *In re Prudential Ins. Co. of America Sales Practices Litig.,* 148 F.3d 283, 333 (1998)) **(footnotes omitted).** "Under the lodestar/multiplier method, the district court first calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate. [It] may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee. Under the percentage method, the court simply awards the attorneys a percentage of the fund sufficient to provide plaintiffs' attorneys with a reasonable fee." *In re Washington Public Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1294 n. 2 (9th Cir.1994) (internal citations omitted). "The 'common-fund' doctrine ... applies, as its name suggests, in cases where an actual common fund has been created as a consequence of the litigation." *Brzonkala v. Morrison,* 272 F.3d 688, 691 n. \* (4th

Cir.2001); *In re Cendant Corp., supra,* at n. 12.

The Fourth Circuit has not determined the preferred method of calculating attorneys' fees where a common fund has been generated on behalf of a class.[7] All but two circuits, the District of Columbia and Eleventh Circuits, which have addressed the issue have found the trial court may use, in its discretion, either the percentage or lodestar method. *See, e.g., id.; Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2nd Cir.2000); *Cook v. Niedert,* 142 F.3d 1004, 1013 (7th Cir.1998); *In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 307 (1st Cir.1995); *In re Washington Public Power Supply Sys. Litig.,* 19 F.3d at 1295; *Gottlieb v. Barry,* 43 F.3d 474 (10th Cir.1994); *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir.1993); *Longden v. Sunderman,* 979 F.2d 1095, 1099 (5th Cir.1992); *Goldenberg, supra* (using the percentage method). And, although the Supreme Court has not addressed the issue, it has been noted that in every case before it involving a common fund, that Court has applied the percentage method. *Gottlieb,* 43 F.3d at 483 n. 5. However, it is undisputed that regardless of the method used, any award must be reasonable. *McDonnell v. Miller Oil Co., Inc.,* 134 F.3d 638, 641 (4th Cir. 1998) ("[W]hen 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount.'") (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *In re Cendant Corp., supra; In re FPI/Agretech Sec. Litig.,* 105 F.3d 469, 475 (9th Cir.1997); *Gottlieb,* 43 F.3d at 482.

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained...." *McKnight v. Circuit City Stores, Inc.,* 14 Fed.Appx. 147, 149 (4th Cir.2001) (quoting *McDonnell, supra*). That factor does not bode well for counsel in this action. Although huge verdicts were obtained against James Bakker, those sums remain uncollectible and counsel has acknowledged that the class has never received any distribution of any sums from any source. The only recovery of money obtained on behalf of the class stemmed from the settlement of the PTL Class claim in the bankruptcy estate of Laventhol & Horwath. That recovery came about due to the efforts of bankruptcy counsel, who were paid the sum of $128,491.79 in legal fees. Indeed, Judge McMillan so noted in his prior Order awarding costs: "[I]t was essential that plaintiffs retain bankruptcy counsel in New York and such representation led directly to the Laventhol settlement." **Memorandum and Order, at 7.**

Moreover, counsel conceded during oral argument that the Laventhol & Horwath firm had been its primary target due to the accounting practices used in connection with PTL internal operations. Thus, as early as 1992, counsel were aware that the primary target was out of the litigation; and, by January 1993, counsel knew the Laventhol & Horwath settlement would be paid out over a ten year period. Nor can the Court ignore the fact that by September 1994, class counsel knew that the Fourth Circuit had completely eliminated

---

**7.** In *Brzonkala, supra,* two individual plaintiffs successfully challenged the constitutionality of the Violence Against Women Act, 42 U.S.C. § 13981. When they moved for an award of attorneys' fees against the United States, the Fourth Circuit affirmed both the use by the trial court of the common benefit doctrine and his decision that no attorneys' fees were warranted. However, the case did not involve a common fund from which attorneys' fees were to be paid, as is the issue here.

DH & S from any future trial. The Circuit's language was clear and the only defendant capable of paying any verdict was eliminated from the case. Nonetheless, as counsel also acknowledged during oral argument, "no expense was spared" and the case was litigated "on a first class basis." Indeed, the Anderson firm opened a satellite office in Charlotte both before and during the trial with the resulting expenses incumbent on the operation of a law firm.[8] However, the same was not forthcoming and 15 years after the action was first begun, not a single class member has received a cent. *Reynolds*, 288 F.3d at 286 ("[C]lass counsel's compensation **must be proportioned to the *incremental* benefits they confer on the class, not the total benefits."**). While the bankruptcy attorneys were successful in negotiating a settlement, class counsel has been resoundingly unsuccessful except as against Bakker, a judgment-proof defendant. *In re FPI/Agretech Sec. Litig.*, 105 F.3d at 475 (**The attorneys who effected the settlement resulting in the common fund should be paid from that fund whereas the attorney whose efforts did not result in that settlement was not entitled to be paid from the fund.**). "It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefitted the fund—whether they tended to create, increase, protect or preserve the fund." *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir.1994) (citations omitted). "Because the Settle-

ment Agreement had already made [the PTL class] [Laventhol & Horwath's] creditor ..., [counsel's] subsequent efforts did not create a common fund from which [PTL] directly benefited and for which [PTL] must pay attorneys' fees." *In re Hexcel Corp.*, 133 F.3d 927 (table), 1998 WL 10561 *1 (9th Cir.1998).

While counsel have pointed to the extensive work done after the first trial and the Circuit's remand, the fact remains that by 1994 they knew or should have known that no defendant remained in the case who was not judgment proof. The consideration of a lack of success "most closely matches the methodology actually employed in the marketplace...." *Gottlieb*, 43 F.3d at 484 (**citations omitted**). In fact, under the retainer agreements executed with the class representatives, class counsel were to receive nothing unless a recovery was made. *Id.* Moreover, assuming *arguendo* that class counsel should in some manner be credited for the fund obtained by bankruptcy counsel, the size of that fund in comparison to the amounts sought and the benefits which may be obtained by individual class members is minuscule. *In re Cendant Corp.*, 243 F.3d at 733. Class counsel, by virtue of this decision, will have received $2,560,448.68 in reimbursements for costs. The balance of the fund remaining for distribution is $1,228,942.99. This means the total recovery from the bankruptcy settlement was $3,789,391.67 on an allowed claim of $45,000,000. The maximum recovery for the 160,000 class members would be approximately $7.68 per member.[9]

---

8. It has been noted more than once that "[e]ffectively, class action plaintiffs' attorneys are joint venturers with their clients who strike a bargain with them under which they will advance the litigation's actual expenses...." **"Class action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation," 100 Colum.L.Rev. 370, 390–91 (2000).**

9. In fact, at oral argument counsel urged the Court to send a message that if plaintiffs' attorneys work hard for a class, then they will be paid, especially in cases where there is no practical means of giving the remaining money to the class. *See, e.g., Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1013 (7th Cir.1999) ("**The smaller the individual claim, the less incentive the claimant has to police the class lawyer's conduct, and the greater the danger, therefore, that the lawyer will**

The Court does not mean to disparage the skill and abilities of class counsel; they put up a long and arduous fight. And, at least one issue, that involving whether the timeshares were securities, was a complex one, *albeit* a pyrrhic victory in view of Bakker's indigence. *In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y.2001). At some point, it became incumbent on class counsel to weigh the economic realities of the litigation, both from the perspective of the class and that of counsel, and to make a considered judgment about the appropriateness of continued litigation. That, as well, was part of the attorneys' duty to their clients.

Nor would counsel be entitled to an award of fees under the lodestar method because, again, the most critical factor is the degree of success obtained. Success "'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit'" qualifies as success warranting a consideration of an award of attorneys' fees. *Arvinger v. Mayor and City Council of Baltimore*, 31 F.3d 196, 200 (4th Cir.1994) (**quoting** *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933). "The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (**internal citations omitted**).

Here, the Class did not obtain an enforceable judgment because it was uncollectible, *i.e.*, a judgment is not enforceable unless it is capable of being executed. *See, e.g., Bonner v. Guccione*, 178 F.3d 581, 594 (2nd Cir.1999) (**Jury's finding that the defendant had violated Title VII was not accompanied by an award of damages; therefore, "there was simply nothing to 'enforce'" and the plaintiff did not obtain an enforceable judg-**

ment.). Nor can the Court ignore the fact that by September 1994, class counsel knew that the Circuit had completely eliminated DH & S from any future trial. The Circuit's language was clear and the only defendant capable of paying any verdict was eliminated the case. "When successful claims are unrelated to unsuccessful claims, it is not appropriate to award fees for the latter." *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir.1998).

Moreover, even if the Court were inclined to find success on the part of class counsel, they have provided no information from which a lodestar calculation could be made with the exception of time sheets. No affidavits were provided to supply information related to the skill required, customary fees or hourly rates in similar cases, the experience, reputation and abilities of class counsel, the novelty or complexity of the legal and factual issues involved or the desirability of the case within the applicable legal community. *Id.*, at 196. Indeed, counsel's submissions were cavalier in nature, often containing typographical errors, incorrect calculations of the sums involved and glaring omissions which required the Court to issue numerous inquiries.

Most troubling to the Court are counsel's failure to notify the class of their request for the balance of the settlement fund as fees, costs and interest and the failure to place those funds in an interest-bearing account for the benefit of the class. Counsel argued that the cost of providing notice would have virtually depleted the fund. However, this Court has recently used special masters who have provided notice to large numbers of persons *via* publication and who have effected distributions to them with little difficulty. No explanation for the failure to place the fund in an interest-bearing account has

**pursue the suit for his own benefit rather** **than for the benefit of the class.").**

been offered. Indeed, the existence of this omission was not intentionally placed before the Court but was disclosed at the bottom of an exhibit only after inquiries as to the amount of interest earned.

The Court considers the failure to provide proper notice to the class or its representatives to have created a conflict of interest. *Culver v. City of Milwaukee,* 277 F.3d 908, 915 (7th Cir.2002) ("**The judge's duty is to order notice unless the risk of prejudice to absent class members is nil . . . .**"); *In re Young,* 253 F.3d 926, 927 (7th Cir.2001); *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1156 (8th Cir.1999). The conflict is exacerbated by counsel's failure to properly place the fund in an interest bearing account, causing the fund to lose an untold amount which would have been available for distribution to the class. The Court finds these acts to have been negligent, at the least. For all the reasons stated herein, the Court therefore declines to make an award of attorneys' fees to class counsel.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the motion of class counsel for pre-judgment and post-judgment interest is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the motion of class counsel for an award of costs is hereby **DENIED** except for the sum of $15,980.25;

**IT IS FURTHER ORDERED** that the motion of class counsel for an award of attorneys' fees is hereby **DENIED;**

**IT IS FURTHER ORDERED** that Charles Lyons is hereby appointed as a **SPECIAL MASTER** and he shall provide to the Court within twenty days of this Order a report of the most appropriate method of providing notice to the class of the fund to be distributed and of distribution thereof.